## STATE *v.* PONS.

### [65 South. 882.]

LICENSES. *Occupation. Statutes. "Oil depot." Code* 1906, *section* 3843.

Under Code 1906, section 3843, imposing a license tax of fifty dollars upon each oil depot and, providing that "each building or tank where oil is stored for delivery shall be deemed a depot, but this provision shall not apply to merchants who retail oil to their customers in the regular course of business," where defendant had or used a room or building erected by an oil company and bearing its sign, in which it stored oil and gasoline which defendant as its agent, retailed therefrom for a commission, accounting to its regular agent, in such case defendant did not maintain an "oil depot" so as to be liable for the tax.

APPEAL from the circuit court of Harrison county.

HON. J. I. BALLENGER, Judge.

Joe Pons was indicted for failure to pay a privilege tax on an oil depot. From a judgment acquitting him, the state appeals.

The facts are fully stated in the opinion of the court.

*J. M. Vardaman* and *Geo. H. Ethridge,* for the state.

There is no written opinion of the judge in this case, so I cannot tell whether he rendered his opinion holding

appellee not guilty on the ground that the one tax paid by the Standard Oil Company covered both depots, or whether he was of the opinion that if there was a tax due, the Standard Oil Company would have to pay it. I will base my brief on the assumption that the trial court was of the opinion that the one tax paid by the Standard Oil Company would cover both places of business. From a careful comparison of the statement of facts in this case with the section of the code which deals with the subject, I cannot see how, under the usual construction of the words of the code, the two depots could be considered as one.

The words of the code on this question are as follows: "Each building or tank where oil is stored for delivery shall be deemed a depot." The facts in this case show that the Standard Oil Company has a regularly established depot on the L. & N. Railroad, a half mile from the depot of appelee, which depot caters to an entirely different trade from that of appellee. Surely this cannot be considered as one and the same depot. It is true that appellee is agent for the Standard Oil Company and receives a commission of one per cent on all oil and gasoline that he sells, but the mere fact that he works on a commission salary basis instead of on a salary basis would not affect the nature of the depot. He could run an oil depot as well on a commission basis as on a salary. The statute says in plain words that each place where oil is stored for delivery shall be deemed a depot and the facts in this case are identical with the words of the statute. The facts show that oil is stored in "large quantities" in appellee's shop and that he has a certain established trade that he caters to.

In this case the main depot is so situated at Biloxi that they cannot conveniently cater to the trade of the oyster and shrimp boats, etc., it being a half mile from shore. In order that the Standard Oil Company may get all of this trade, a separate and distinct depot is established

out in the Mississippi Sound and a large sign with the words "Standard Oil Company, Gasoline" is placed across the front of the depot, and a separate agent is placed there to look after the interest of the company. Judging from the words of the statute and taking the construction placed upon them by the courts, it was the intention of the legislature to levy a privilege tax on each depot or place where oil was stored for delivery, and I submit that the facts show that there were two depots. This case is analagous to a case where a merchant had several retail stores in the same town. The same person owns both stores but no one would doubt for a minute that he would be liable for a separate privilege tax on each store. It is the store or "stand" that is protected by the law, therefore the store should pay the tax to secure this protection. It is a well-known fact that two stores require more protection from the law than one store does; then why should not two stores pay a greater tax than one store.

In the case of *Insurance Agency* v. *Code,* 87 Miss. 637, the court held that it was right and proper that an insurance agency should be taxed, and that an additional tax on each insurance agent would not constitute double taxation.

In the case of *Mitchell* v. *Meridian,* 67 Miss. 644, the leading case on privilege laws in Mississippi, the court had up for consideration a case on all fours with the case at bar. In that case the Singer Machine Company had a "depot" in the city of Meridian to which it shipped sewing machines to be distributed among the agents of that territory. Mitchell had to distribute machines as agents and collect accounts, but he sold no machines. The general agency of the company was in Mobile and the Mobile agent was a frequent visitor to Meridian in the interest of the business. Mitchell paid a privilege tax to the city of Meridian as "sewing machine agent." Mitchell refused to pay the city privilege tax on "each agency for sewing machines" and was convicted and fined. Upon

appeal to the supreme court the case was affirmed. In the course of the opinion, the court, Judge COOPER speaking, said: "The legislature in dealing with the subject of privileges, taxes then in reference to the known and usual course of business, and the burden imposed cannot be evaded by changes in the mere form of transacting the business intended to be taxed, or by parceling out among several, the duties usually pertaining to one." "As a general rule, one who is engaged in two separate and distinct occupations is subject to license-tax on both occupations. So, too, one who conducts the same business at different places, whether the business be wholesale or retail, is liable to a license-tax on the business conducted in each place." 25 Cyc. 626, K. B.; *State* v. *Holmes*, 28 La. Ann. 765, 26 Am. Rep. 110; *Walters* v. *Duke*, La. Ann. 668.

"This rule applies even. where one of the places of business is merely a branch establishment, provided the business at the principal and branch establishment is carried on separately." *Murrell* v. *Bokenfohr*, 108 La. Ann. 19, 32 So. 176.

There is an exception in the statute which provides that merchants, who retail oil, etc., in the usual course of their business shall not be subject to this tax, but that exception does not apply to the case at bar. According to the facts in this case, that "oil depot" was run as a separate and distinct business having no connection with the fish business. Granting for the argument that the oil depot was run in the same building as the fish business, by no construction could an oil depot be classed as incident to a fish bsuiness, and the oil depot would be liable to the tax. As to buying and selling cotton seed being a part of a mercantile business, see *Jones* v. *State*, 69 Miss. 406.

*Ford & White*, for appellee.

We submit that a depot may consist of a single building or a number of buildings. It is the purpose for which

it is used and not the number of buildings that control. A depot does not necessarily mean a single building, but means the entire grounds used by a railroad company for its business purposes with the public at that station. *Pittsburg, Ft. W. & C. R. Co.* v. *Rose,* 24 Ohio St. 219; 3 Words and Phrases, page 2005. (Note.) In this case, the court held that a building on a lot forty rods to the main depot building was a part of the depot building and ground. 41 Cen Dig., Title, Railroad, sec. 171.

The word depot is not necessarily limited to a place provided for the convenience of passengers while waiting for the arrival or departure of trains. It applies also to buildings used for the receipt and storage of freight, which when received, is to be safely held until forwarded by the cars of the company or delivered to the owner or consignee. *Humphreys* v. *McKissock,* 35 Law. Ed. (U. S.), page 475.

Laws imposing privilege taxes are to be construed in favor of the citizen and no occupation is to be taxed unless clearly within the provision of such law. *V. & M. R. R. Co.* v. *State,* 62 Miss. 107. Unless plainly expressing a different purpose, a statute will be construed as intended to levy a single tax upon property, though the words of the law would naturally bear a broader meaning. The courts will, as far as possible without doing violence to the language used, restrain the meaning of a statute apparently authorzing a double taxation. *State* v. *Simmons,* 70 Miss. 485. Code 1906, sec. 3845, imposing a privilege tax on every person doing a plumbing business, does not apply to a plumber working by the day or taking the contracts to be performed by his own labor. The tax is due only from a person, firm or corporation taking contracts to be performed by the labor of other plumbers. The law imposing privilege taxes should be strictly construed, liberty, in its broad sense, implies the right to follow any of the ordinary callings of life without being unduly trammelled. *Willby* v. *State,* 93 Miss. 767.

In this case the Standard Oil Company had a regular or main depot in Biloxi, and for convenience in delivering oil and not for the purpose of getting new customers, it stored oil from its regular depot in a room or warehouse for the purpose of allowing boats to come alongside and take on oil, thus avoiding the trouble and delay which would have resulted had it adopted a system by which it would have had to delivered separately each order made by a boat. We presume that if the Standard Oil Company had stored its oil in different tanks on the same lot, it would not be contended that each separate tank or each separate house would constitute a separate depot.

Suppose, to illustrate, the Standard Oil Company had a depot, with a regular agent in charge, on a lot, along one side of which ran a street, and along the other side of which ran a watercourse, and for convenience in loading wagons, it should have one warehouse on the side next to the highway, and for convenience in loading boats, it should have another on the side next to the watercourse, with a subagent in charge of each, could it be contended that this would constitute three oil depots and subject it to a payment of three privilege taxes? We think not, and we insist that the fact that this warehouse or subdepot was on a separate lot would not change the rule.

COOK, J., delivered the opinion of the court.

Joe Pons, appellee, was indicted for a failure to pay a privilege tax on an alleged "oil depot." By agreement, a jury was waived and the case was tried by the circuit judge upon the following agreed statement of facts:

"The defendant, Joe Pons, uses and operates a pier or wharf in the city of Biloxi, belonging to his mother, which wharf extends out into the Mississippi Sound, to where the water is deep enough for boats to come alongside said pier, at which said wharf the defendant, Joe

Pons, operates a fish house, where he deals in fish and other sea foods; that on another part of said pier the defendant has and uses another room or building, erected by the Standard Oil Company, and not connected with the fish house aforesaid; that at Biloxi a large quantity of gasoline is used by oyster and shrimp boats, and other boats propelled by gasoline motors, and that in last-named room on the wharf of said defendant there is kept and stored oils and gasoline belonging to the Standard Oil Company, which said oils and gasoline are kept primarily for the purpose of supplying boats with gasoline, and said oils are sold by defendant to such boats, and also to passing automobiles and others that may desire to purchase from defendant; that said sales are made by defendant as agent for the Standard Oil Company, for which sales the defendant receives a commission of one per cent of all sales of oils and gasoline, accounting to the regular agent at Biloxi of the Standard Oil Company for all such sales; that on said room or building where said gasoline is stored there is a sign about fifteen feet long, extending along the front of said room or building, on which is printed in large letters 'Standard Oil Company, Gasoline;' that the Standard Oil Company maintains near the Louisville & Nashville Railroad Company's depot in said city a regular oil depot, with a regular agent of said company in charge, and pays a regular license for such oil depot, in which depot large quantities of oil and gasoline are stored and kept, being drawn through pipes from the cars into tanks in said depot; that said depot near the Louisville & Nashville Railroad Company's depot is about one-half mile from said wharf on the beach in charge of the said defendant, Joe Pons, and is inaccessible to boats using gasoline for motor power, and that said Standard Oil Company, through its regular agent at Biloxi, delivers oils and gasoline to its agent, Joe Pons, at the wharf aforesaid, where he sells and delivers it to boats, automobiles, and others applying to

him for the same; that no license is paid by the Standard Oil Company, or Joe Pons, except the license hereinabove mentioned, and that Joe Pons is acting· as agent of the Standard Oil Company when selling oil and gasoline at said wharf.''

The court entered a judgment finding the defendant not guilty, and the state appealed.

Section 3843 of the Code of 1906, under which the indictment was drawn, reads:

''Oil Depot.—On each oil depot.................$50

''Each building or tank where oil is stored for delivery shall be deemed a depot, but this provision shall not apply to merchants who retail oil to their customers in the regular course of business.''

In our opinion, the finding of the judge is correct. Under the facts, appellee's business is not of the kind upon which the tax of fifty dollars was levied. He did not run an oil depot.

*Affirmed.*